## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| United States of America | ) | |
| | ) | |
| | ) | Case No. 14-cv-1588 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| Mario Reeves. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

The court has before it Mario Reeves's amended 28 U.S.C. § 2255 motion collaterally
attacking his 25-year sentence for drug trafficking offenses as well as supplemental briefing on
whether the one-year statute of limitations should be equitably tolled. *See* 28 U.S.C. § 2255(f)
(one-year limitations period). This opinion marks the second time this court has addressed
Reeves's arguments. After denying Reeves's equitable tolling arguments in an April 11, 2022,
opinion (*Reeves I),* this court invited Reeves to submit additional briefing and any additional
evidence to support his argument. Taking into account this supplemental briefing (which
includes no new evidence from Reeves), the court again finds that Reeves has not established a
basis for equitable tolling. Therefore, Reeves's amended § 2255 motion must be dismissed as
untimely.

### I. Background

Together, the Seventh Circuit's opinion affirming Reeves's convictions on direct appeal
and this court's memorandum opinion and order dated April 11, 2022, cited in this order as
*Reeves I*, described the pertinent factual and procedural background in detail. *See United
States v. Reeves*, 695 F.3d 637, 638–39 (7th Cir. 2012); *United States v. Reeves* (*Reeves I*), slip
op. at 2–7, Civ. ECF No. 40, also available at 2022 WL 1085198.[1] As a brief recap, Reeves is
serving a 25-year sentence for his role in a Chicago-based heroin distribution operation called the
"Poison Line." *See Reeves*, 695 F.3d at 638. Reeves's statutory mandatory minimum increased

---

1   Citations to "Cr. ECF No." refer to the docket of Reeves's criminal case no. 07-cr-614. Citations to
    "Civ. ECF No." refer to the docket of Reeves's § 2255 proceeding, case no. 14-cv-1588.

from 10 to 20 years because the court found at his 2012 sentencing hearing that a 2004 conviction in Cook County Circuit Court for possession of cocaine and a separate 2004 conviction in the same court for manufacture and delivery of cocaine qualified as "felony drug offenses" under 21 U.S.C. § 841(b)(1)(E)(ii). *Reeves*, 695 F.3d at 638; Information 1, Cr. ECF No. 397; *see also* 720 Ill. Comp. Stat. § 570/402(c) (2002); 720 Ill. Comp. Stat. § 570/401(d) (2004).

Reeves contended in his amended 28 U.S.C. § 2255 motion that these 2004 convictions can no longer serve as predicates for an § 851 enhancement after *Mathis v. United States*, 579 U.S. 500 (2016). *See* Am. § 2255 Mot. at 5–16, Civ. ECF No. 31. The government has never argued (and does not now contend) "that Reeves's 2004 convictions can support a § 851 enhancement after *Mathis* and *United States v. Ruth*, 966 F.3d 642, 646–50 (7th Cir. 2020)," in which the Seventh Circuit accepted an argument very similar to Reeves's concerning Illinois' statutory definition of "cocaine." *Reeves I*, slip op. at 8–9. Rather, the dispositive questions are whether Reeves's *Mathis* claim is timely and, if not, whether the one-year limitations period should be equitably tolled.

### A. Untimeliness of Amended § 2255 Motion

The procedural events most important to the statute of limitations analysis follow:

- August 20, 2012: The Seventh Circuit affirmed Reeves's sentence on direct appeal. 695 F.3d at 641.

- March 18, 2013: The Supreme Court denied Reeves's petition for a writ of certiorari. *Reeves v. United States*, 568 U.S. 1239. The one-year statute of limitations under 28 U.S.C. § 2255(f)(1) began running.

- March 6, 2014: Without a lawyer, Reeves filed his original § 2255 motion and a 26-page memorandum of law. Civ. ECF Nos. 1, 3. The original motion did not include a *Mathis*-type claim.

- June 23, 2016: The Supreme Court decided *Mathis*. Under the Seventh Circuit's binding decision in *Franklin v. Keyes*, 30 F.4th 634, "*Mathis* . . . did not restart the limitations clock under § 2255(f)(3)." *Reeves I*, slip op. at 10 (alteration in original) (quoting *Franklin*, 30 F.4th at 645).

- April 19, 2019: A lawyer, Thomas C. Hallock ("Hallock"), filed a notice of appearance for Reeves. Civ. ECF No. 10.

- August 31, 2020: Hallock, with leave of court, filed Reeves's amended § 2255 motion asserting his *Mathis* claim for the first time. Civ. ECF No. 31.

This court has ruled that Reeves's one-year limitations period began running "on the 'date on which [his] judgment of conviction [became] final.'" *Reeves I*, slip op. at 11 (quoting 28 U.S.C. § 2255(f)(1)). Accordingly, Reeves had one year from March 18, 2013 (when the Supreme Court denied his petition for certiorari), to file a § 2255 motion containing his *Mathis* claim. Reeves's August 31, 2020, *Mathis* claim was therefore untimely because it appeared for the first time in his amended § 2255 motion filed more than six years later. *Id.* (citation omitted). This ruling has not been challenged.

### B. Initial Equitable Tolling Arguments and Rulings in Reeves I

Reeves made his initial equitable tolling request in his reply supporting his amended § 2255 motion. Reply Supp. Am. § 2255 Mot. ("Reply") at 3–7, Civ. ECF No. 37. He based the request solely on allegations and averments that attorney Beau Brindley ("Brindley") abandoned him. *See id.* Reeves submitted his own affidavit and records from his mother's bank account in support of his equitable tolling request. Civ. ECF Nos. 37-1, 37-2. Reeves averred in part:

> In the winter of 2015 I contacted, Beau Brindley, concerning my previous § 2255 motion I had filed on March 16, 2014 in the court pro se. . . . At the conclusion of the said phone conversation, it was agreed between Mr. Brindley and I that Mr. Brindley would notify the Court with a formal notice of appearance in the above-captioned case number as my attorney of record in the proceeding. Mr. Brindley also informed me that he would supplement the § 2255, because it was already filed before he'd join on to the case. I then asked Mr. Brindley the total cost for his representation of me in this proceeding. Mr. Brindley quoted me a $12,000 fee. I, in turn, informed Mr. Brindley that I didn't have the total $12,000 at that time, but we agreed that he would be retained for an up front fee [of] $5,000 . . . to be brought to his office by my mother, Kimberly Reeves, on the condition that Mr. Brindley would make an appearance as counsel of record. My mother, Kimberly Reeves ultimately met with Mr. Brindley in the month of February, 2015 to pay the $5,000 retainer in cash. It was understood by all parties from that day forward that the remaining balance of $7,000 would be paid [in] installments. After paying [the] initial retainer fee, I had no reason to expect that Mr. Brindley wouldn't be monitoring my case. However, not soon after I noticed Mr. Brindley started to exhibit elusive behavior, as it became very hard to communicate, as he wasn't available via phone or through correspondence (written). I would call Mr. Brindley's office weekly to get an updated status on my case. Mr. Brindley lied, telling me he had just filed this or that in my case. So, I would after speaking to Mr. Brindley call down to the clerk of this court to check and see if he had actually filed anything in my case, as much as a notice of appearance of counsel. I would, in turn, be informed by the court's clerk office of the latest docket entry as reflecting

> only the pro se filing as the last docket entry in the case under the above-captioned case number. . . . In the rare times that I was fortunate to talk directly to Mr. Brindley, he would quell my questions as to his inaction with the "new pending developments" in case law that'll directly apply to my case and situation, once ruled on. . . . [In or around summer of 2016,] he again informed me that he had recently filed motions in the case, but was waiting on a particular ruling in the higher court to perfect his proposed amendment to my § 2255 motion; and; furthermore, that he had been tied up with major trial. . . . [I]n the fall of 2018, I had my uncle . . . go by Mr. Brindley instead of my mother. He explained to my uncle that he wasn't going to be able to represent me in this case, and wrote my mother a check for $5,000. By now, its spring of 2019, which is when I spoke with Thomas Hallock about representing me in this proceeding, which he agreed and he informed me that Mr. Brindley never filed anything in my case not so much as a notice of appearance.

Reeves Aff. 1–4, Civ. ECF No. 37-1.

In November 2018, two checks issued by the Law Offices of Beau Brindley, totaling $5,000, were deposited into Reeves's mother's bank account. Bank Records 1, Civ. ECF No. 37-2. Those deposits are consistent with Reeves's affidavit. *See* Reeves Aff. 3.

This court ruled in *Reeves I* that this evidence fell "well short" of justifying equitable tolling. *Reeves I*, slip op. at 14–15. First, even if true, Reeves's abandonment argument did not justify equitable tolling because it did not cover the entire limitations period. Reeves did "not explain his delay of eleven months (from March 2014 to February 2015) in hiring Brindley–a delay nearly as long as the limitations period itself." *Id.* at 13 (citation omitted). And after hiring Brindley, Reeves admitted that he repeatedly called the clerk of this court and learned that Brindley was not filing anything. Further, Reeves did not attempt to show that he was diligently pursuing his rights in the approximately 22-month period between the return of his payments to Brindley in November 2018 and the filing of Reeves's amended § 2255 motion by Hallock on August 31, 2020. *Id.* at 13–14.

Reeves's argument that "Brindley assured him in 2016 that he was awaiting legal developments, which Reeves [interpreted] as a reference to *Mathis*," also had "at least two serious problems." *Reeves I*, slip op. at 14. The first was *Franklin*'s holding that *Mathis* did not start the § 2255 one-year limitations clock, so a *Mathis* claim would have been untimely if Reeves had asserted one in 2016 or 2017. *See id.* "Second, unlike the petitioner in *Holland v. Florida*, 560 U.S. 631 (2010), who was thwarted in his efforts to get information about his case

4

from the courts, Reeves aver[ed] that he called this court's clerk's office and discovered that Brindley had filed nothing, not even his appearance, yet Reeves continued to rely on Brindley's assurances for years" and filed nothing with this court, even though he knew how to do so.  *Id*. (citing Reeves Aff. 2).

Despite the insufficiency of Reeves's showing in support of his request for equitable tolling, the court permitted the parties to submit supplemental evidence and argument for two reasons.  *See Reeves I*, slip op. at 15.  First, Reeves raised equitable tolling in his reply brief, so the court did not have the benefit of full adversary briefing from the government.  *Id*.  Second, the briefing on equitable tolling preceded *Franklin*, and "Reeves's arguments . . . regarding his diligence presuppose[d] a rule contrary to *Franklin*."  *Id*.

### C.  Supplemental Filings

Attorney Hallock sought and obtained leave to withdraw shortly after *Reeves I* was issued.  He represented that Reeves wished to hire another attorney.  *See* Mot. Leave to Withdraw 1, Civ. ECF No. 43.  Jeffrey B. Steinback filed a notice of appearance for Reeves on June 27, 2022, and co-counsel Vadim A. Glozman filed an appearance for Reeves on October 6, 2022.  Civ. ECF Nos. 47 (Steinback) and 56 (Glozman).

After several court-authorized extensions (*see* Civ. ECF Nos. 49, 52, and 55), Reeves filed his supplemental memorandum, Civ. ECF No. 57, on October 6, 2022.  He attached no evidence.  The government filed its supplemental response on November 18, 2022, Civ. ECF No. 62, and prison medical and educational records for Reeves under seal on November 21, 2022, Civ. ECF No. 65.

### II.  Equitable Tolling

This court described the requirements for equitable tolling in *Reeves I* as follows:

"Equitable tolling is 'rare' and 'reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing.' " *Boulb v. United States*, 818 F.3d 334, 340 (7th Cir. 2016) (quoting *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014)).  To obtain equitable relief from the one-year limitations period, Reeves "must show (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lombardo v. United States*, 860 F.3d 547, 551 (7th Cir. 2017) (citing *Holland*,

560 U.S. at 649) (other citation omitted). Reeves relies primarily on *Holland*, a case in which an attorney's errors caused a death row inmate to lose his opportunity to pursue habeas corpus relief. Remanding for further evidentiary development, the Supreme Court held that equitable tolling was potentially available based on "an attorney's prolonged pattern of neglect and detachment from his client, involving years of directions that went unheeded, pleas for information that went unanswered, and requests for substitution of counsel that were denied." *Lombardo*, 860 F.3d at 553 (citing *Holland*, 560 U.S. at 652–53); *see also Holland*, 560 U.S. at 635–43. By contrast, " 'a garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Holland*, 560 U.S. at 651–52 (internal citations omitted). This rule has been justified on the ground that, absent complete abandonment or egregious attorney error as present in *Holland*, an "attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.' " *Lombardo*, 860 F.3d at 552 (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). Reeves must demonstrate diligence during the entire period for which he seeks equitable tolling. *See, e.g., Socha,* 763 F.3d at 687. His evidence leaves large gaps.

*Reeves I*, slip op. at 13 (paragraph break omitted).

As Reeves argues in his supplemental memorandum, Civ. ECF No. 57 at 4, the court must look at "the full picture with which the inmate is contending" when determining whether equitable tolling is appropriate. *Socha*, 763 F.3d at 685. In his first round of equitable tolling briefing, Reeves relied exclusively on Brindley's alleged abandonment. Reply 3–7. As presented in Reeves's supplemental memorandum, "the full picture" now consists of four factors that together fail to support the extraordinary remedy of equitable tolling.

## A. Functional Illiteracy (March 2014–February 2015 and November 2018–April 2019)

Reeves's sole basis for equitable tolling during the periods in which no attorney represented him is his alleged functional illiteracy. Reeves represents without supporting evidence:

> Mario Reeves is an individual who suffers from a cognitive impairment by virtue of being functionally illiterate. Mario's *pro se* motion was certainly not written by him. Mario was dependent on third persons, who were not always available to update him on the status and possible nuances of his case. Beyond this, Mario is dependent upon others to take the time to read any notices, responses, and the like, in order to understand arguments made against him. This is particularly true during the COVID-19 pandemic, where there have been complete 24-hour-a-day lockdowns, thereby cutting Mario off from any ability to reach out to others to assist him. Moreover, Mr. Reeves is certainly incapable of doing any independent research, regardless of accessibility to the Internet or the prison law library.

Suppl. Mem. 8 (footnote omitted), Civ. ECF No. 57.

The government questions whether Reeves is in fact functionally illiterate, pointing to prison records and letters filed in Reeves's criminal case. *See* Suppl. Resp. 12–14, Civ. ECF No. 62. The evidence the government cites is inconclusive. The prison medical and educational records do not note any reading difficulties, but the government does not explain why such a notation would be expected. Some of the prison records refer to acronyms describing tests and assessments Reeves has taken. If one or more of these tests sheds light on Reeves's functional illiteracy, the government has not explained how, and the answer is not apparent from the alphabet soup of acronyms in the records. *See* Civ. ECF No. 65-3 at 1–2. Meanwhile, Reeves has repeatedly taken classes in an effort to obtain a General Education Degree ("GED") without success. *See id.* The reasons for his lack of success do not appear in the record. *See id.* Granted, letters of support sent to the court by Reeves's family and friends indicate that Reeves has corresponded with them by mail, *see, e.g.*, Cr. ECF No. 929-12 at 6, 9, but the court has been directed to nothing ruling out the possibility that someone took dictation from Reeves or drafted the letters for him. *See* Suppl. Resp. 13–14.

The Seventh Circuit's equitable tolling analysis of a claim including functional illiteracy in *Conroy v. Thompson*, 929 F.3d 818, 820–21 (7th Cir. 2019), is instructive. In that case, Bill Conroy ("Conroy"), a state prisoner, filed a federal habeas corpus petition in 2016 collaterally attacking his 2007 convictions in state court for attempted murder and related charges. *See* 929 F.3d at 819. Conroy conceded that he missed the one-year deadline to file his federal habeas corpus petition and requested equitable tolling. *See id.* He argued "that he is illiterate, has emotional issues, and was diagnosed with schizoaffective disorder." *Id.* at 820. The Seventh Circuit held that, to obtain equitable tolling on these grounds, a habeas corpus petitioner "must provide evidence establishing that his mental issues 'actually impaired his ability to pursue his claims' throughout the limitations period." *Id.* (quoting *Mayberry v. Dittmann*, 904 F.3d 525, 531 (7th Cir. 2018) (other citation omitted)). The Seventh Circuit concluded that Conroy's evidence fell "far short" of this standard. *Id.* at 821. Among other things, the record showed that Conroy had filed motions in state court in 2009 and 2014. *See id.*

"These filings," the court stated, "show that Conroy had the capacity to engage in the legal process," making equitable tolling inappropriate. *Id.* (citing *Obriecht v. Foster*, 727 F.3d 744, 751 (7th Cir. 2013)). Finally, the Seventh Circuit found the fact that Conroy belatedly asserted his claim of functional illiteracy to be "damning." *Id.* Conroy had originally argued for equitable tolling because he "was unaware of [the applicable] time limits," which is not generally an extraordinary reason justifying equitable tolling. *Id*. (citing *Davis v. Humphreys*, 747 F.3d 497, 500 (7th Cir. 2014)).

Similar to the Seventh Circuit's criticism of the belated functional illiteracy claim in *Conroy*, Reeves raised his claim of functional illiteracy for the first time in supplemental briefing. Reeves initially relied only on Brindley's alleged abandonment to support equitable tolling. *See* Reeves Aff. 1–4. Reeves did not aver in his affidavit that he was functionally illiterate or that someone prepared the affidavit and read it to him. *See id*.

The court need not, and does not, make a finding on whether Reeves is or is not functionally illiterate because Reeves has failed to "provide evidence that his [alleged functional illiteracy] actually impaired his ability to pursue his claims." *Conroy*, 929 F.3d at 820 (quotation omitted). When it authorized supplemental briefing, the court provided Reeves with an opportunity to submit supplemental evidence, such as an affidavit or additional documentary evidence, because the evidence he submitted fell "well short" of justifying equitable tolling. *See Reeves I*, slip op. at 14–15. Yet Reeves attached no new evidence, such as an affidavit, to his supplemental memorandum. *See* Civ. ECF No. 57. On this record, then, even if Reeves did not draft his original, *pro se* § 2255 motion and the accompanying 26-page memorandum of law, Civ. ECF Nos. 1, 3, his functional illiteracy did not prevent him from finding someone to draft and file both documents within a year. And Reeves's affidavit makes clear that, regardless of his functional illiteracy, he did in fact call the clerk's office of this court, inquired about the case's status, and understood that Brindley had not filed anything for years. *See* Reeves Aff. 2. Nor does Reeves explain in his supplemental memorandum how his functional illiteracy actually impaired his ability to pursue his claims when he was without a lawyer. *See Mayberry*, 904 F.3d

at 531 (affirming denial of equitable tolling to prisoner based on allegations of functional illiteracy even though prison records showed, unlike the records here, that prisoner had "serious mental illness"); *Sturdivant v. Butler*, 2016 WL 7324566, at *3 (N.D. Ill. Dec. 16, 2016) (denying equitable tolling to illiterate prisoner for the same reason); *United States v. Bahena*, 524 F. Supp. 2d 1027, 1031 (N.D. Ill. 2007) (same). In sum, the court has not been given an adequate evidentiary basis in the record to find that Reeves's functional illiteracy prevented him from participating in or understanding this case, as is required for equitable tolling. *See Conroy*, 929 F.3d at 820–21; *Mayberry*, 904 F.3d at 531.

### B. Alleged Abandonment by Brindley (February 2015–November 2018)

Elaborating upon arguments made in the prior round of § 2255 briefing, Reeves asserts that his constitutional right to receive effective assistance of counsel was violated as a result of Brindley's alleged abandonment. Suppl. Mem. 4–5 (citing *Kimmelman v. Morrison*, 477 U.S. 365, 377 (1986)); *see also id.* at 13. Contrary to Reeves's argument, the Supreme Court has made clear that in the post-conviction context after a direct appeal, "prisoners have no constitutional right to counsel." *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007) (citing *Coleman, supra*, 501 U.S. at 756–57).

Reeves also again asserts that Brindley "could have and should have" filed an amended § 2255 motion or sought an extension when *Mathis* was pending before the Supreme Court in or around 2016. *See* Suppl. Mem. 5. But, as previously explained, taking either step would not have rendered Reeves's *Mathis* claim timely because under the Seventh Circuit's *Franklin* decision, "Reeves's *Mathis* claim would have been untimely even if filed within one year of *Mathis*." *Reeves I*, slip op. at 14. Having been given an opportunity to brief *Franklin*, Reeves develops no argument that his § 2255 motion would have been timely had Brindley filed it around 2016. *See* Suppl. Mem. 4–5.

Although attorney abandonment can in limited circumstances be a ground for equitable tolling, Reeves's abandonment argument fails for the reasons discussed in *Reeves I*, slip op. at 14–15. Reeves has not shown that he acted diligently during the period of Brindley's alleged

abandonment. *See id.* He "avers that he called this court's clerk's office and discovered that Brindley had filed nothing, not even his appearance, yet Reeves continued to rely on Brindley's assurances for years." *Id.* at 14 (citing Reeves Aff. 2 and distinguishing *Holland*, *supra*, 560 U.S. at 651–52, and *Socha*, *supra*, 763 F.3d at 687). This court stated in *Reeves I* that "Reeves's inactivity [had] not been justified," *id.*, yet in his supplemental memorandum, Reeves offers no justification for his inactivity in the face of Brindley's alleged abandonment. As the Seventh Circuit has stated when denying equitable tolling, "[C]lients, even if incarcerated, must vigilantly oversee, and ultimately bear responsibility for, their attorneys' actions or failures." *Lombardo*, 860 F.3d at 552 (brackets omitted) (quoting *Modrowski*, 322 F.3d at 968).

### C. *Hallock's Representation and the COVID-19 Pandemic (April 2019–August 31, 2020)*

Reeves raises two grounds for equitable tolling during the approximately 16-month period between Hallock's first appearance (April 19, 2019) and the filing of Reeves's amended § 2255 motion (Aug. 31, 2020). At the outset, it is worth nothing that Reeves's amended § 2255 motion would be untimely even if the limitations period were equitably tolled during this period because Reeves has not provided a basis for equitable tolling between March 2013 and Hallock's first appearance on April 19, 2019. For the following reasons, Reeves also has not provided an adequate basis for equitable tolling during the 16-month period between Hallock's first appearance (April 19, 2019) and the filing of Reeves's amended § 2255 motion (August 31, 2020).

Reeves first asserts in conclusory fashion that Hallock pursued "another issue" (not specified) for nearly two years after filing a first appearance, constraining "Reeves' ability to understand what was taking place in his case, and derail[ing] Mr. Reeves's attempts to collaterally attack his sentence." Suppl. Mem. at 13–14. Reeves does not explain what issue Hallock was pursuing or explain why or how Hallock impaired his ability to understand what was happening in this case. *See id.* at 13–14. Nor does Reeves attempt to show that he was diligently pursuing his rights after he hired Hallock. Reeves therefore has not carried his burden

10

to come forward with "specific facts" justifying equitable tolling on this ground. *Stamps v. Duncan*, 2014 WL 3748638, at *4 (N.D. Ill. July 30, 2014) (citation omitted) (denying equitable tolling for this reason).

Reeves also seeks equitable tolling due to the COVID-19 pandemic. Suppl. Mem. 13–14. The outbreak of the COVID-19 pandemic caused widespread disruptions in society in general and the federal prison system in particular. *See generally United States v. Washington*, 2021 WL 2222609, at *3 (N.D. Ill. June 2, 2021). Consequently, "judges have concluded that an incarcerated section 2255 movant or a habeas corpus petitioner is entitled to equitable tolling if he can show that disruptions and delays due to COVID-19 prevented him from filing a timely motion." *Id.* (collecting cases). But the pandemic's "mere existence . . . does not warrant equitable tolling" without some explanation of how it prevented a § 2255 movant from timely filing his motion. *Coffey v. City of Freeport*, 2022 WL 1404750, at *2 (N.D. Ill. May 4, 2022) (citations omitted); *accord Randle v. Simmons*, 2022 WL 15454407, at *5–6 (N.D. Ill. Oct. 27, 2022) (requiring applicant for equitable tolling to show a "nexus" between COVID-19 and missed deadline (citation omitted)); *see also Katz v. U.S. Dep't of Lab.*, 857 F. App'x 859, 864 (7th Cir. 2021).

Reeves does not explain with any specificity how the disruptions caused by the pandemic interfered with his ability to communicate with Hallock or pursue his claims. *See* Suppl. Mem. 6–7, 13–14. Without such an explanation, the outbreak of the COVID-19 pandemic beginning in March 2020 does not furnish a ground for equitable tolling. *See Katz*, 857 F. App'x at 864; *Randle*, 2022 WL 15454407, at *5–6; *Coffey*, 2022 WL 1404750, at *2; *Sloan v. United States*, 2021 WL 6102164, at *3 (C.D. Ill. Dec. 23, 2021).

### III. Other Arguments

Reeves raises two additional arguments in his supplemental memorandum. He contends that he is entitled to § 2255 relief under Federal Rule of Civil Procedure 60(b). He also maintains that Seventh Circuit law would govern a 28 U.S.C. § 2241 petition based on his *Mathis* claim.

### A. *Relief From a Judgment Under Federal Rule of Civil Procedure 60(b)*

Reeves contends that "this Court has the discretion and authority to grant relief from the judgment entered in this case under Rule 60(b)(6) of the Federal Rules of Civil Procedure." Suppl. Mem. 11. Reeves did not advance a Rule 60(b) argument in his original § 2255 motion, the accompanying memorandum, his amended § 2255 motion, or his reply in support of it. And Reeves's Rule 60(b) argument exceeds the scope of the supplemental briefing on equitable tolling authorized by this court. *See Reeves I*, slip op. at 15. Reeves has therefore waived his Rule 60(b) argument because "arguments made for the first time in a reply brief or in supplemental filings" are waived. *Rand v. United States*, 2012 WL 1357677, at *3 n.1 (N.D. Ill. Apr. 18, 2012) (Gottschall, J.; § 2255 proceeding) (citing *United States v. Harris*, 394 F.3d 543, 559 (7th Cir. 2005)).

Waiver aside, "Federal Rule of Civil Procedure 60(b) permits 'a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances.'" *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005)) (§ 2255 proceeding). Rules 60(b)(1)–(5) list specific grounds on which a judgment may be reopened, such as mistake, surprise, inadvertence, or excusable neglect (Rule 60(b)(1)) and lack of jurisdiction (Rule 60(b)(4)). Rule 60(b)(6), on which Reeves relies, provides a "catch all" ground, permitting a judgment to be reopened for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) "is available only when Rules 60(b)(1) through (b)(5) are inapplicable," and "'extraordinary circumstances' must justify reopening" a judgment under Rule 60(b)(6). *Kemp*, 142 S. Ct. at 1861 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 & n.11 (1988)).

Reeves's effort to use Rule 60(b) to avoid § 2255's one-year statute of limitations fails. "The Supreme Court long ago laid to rest the characterization of § 2255 actions as a continuation of the criminal proceeding. 'An action under 28 U.S.C. § 2255 is a separate proceeding, independent of the original criminal case.'" *Lowe v. United States*, 923 F.2d 528, 529 (7th Cir. 1991) (internal citation and parentheses omitted) (quoting *Andrews v. United States*, 373 U.S.

12

334, 338 (1963)), *abrogated on other grounds by United States v. Byerley*, 46 F.3d 694 (7th Cir. 1995). The grounds for relief in a § 2255 proceeding are limited: the moving party "must demonstrate that the alleged error [in his criminal judgment] is 'jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice.'"[2] *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (quoting *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1992)). Rule 60(b) does not expand these statutory grounds because it would violate the Rules Enabling Act if it did; a rule of civil procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

After judgment has been entered, Rule 60(b) may be used "in rare circumstances" to reopen a judgment dismissing a § 2255 habeas corpus petition. *Ramirez v. United States*, 799 F.3d 845, 850 (7th Cir. 2015) (citing *Gonzalez*, 545 U.S. at 534–36). The Seventh Circuit has assumed that Federal Rule of Civil Procedure 58, generally requiring entry of judgment in a separate document terminating a civil case, applies in § 2255 proceedings. *See Lawuary v. United States*, 669 F.3d 864, 866 (7th Cir. 2012); *Hope v. United States*, 43 F.3d 1140, 1142 & n.1 (7th Cir. 1994). No final judgment has yet been entered under Rule 58. Even if a separate judgment is not required, at the time Reeves asserted this claim, the court had not resolved the merits of Reeves's § 2255 motion or his equitable tolling claim, *see Reeves I*, slip op. at 15, so Rule 60(b) had no work to do. There was no judgment or final decision to revisit or reopen.[3] Cf. *Lawuary*, 669 F.3d at 866.

---

2  Rules 33–35 of the Federal Rules of Criminal Procedure provide several limited means for vacating or modifying a criminal judgment. Rule 60 applies in § 2255 proceedings via Rule 12 of the Rules Governing § 2255 Proceedings in the United States District Courts, which provides, "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."

3  The absence of a final judgment distinguishes the two Rule 60(b) cases Reeves cites. *Adams v. United States,* 911 F.3d 397 (7th Cir. 2018), concerned a petitioner who lost a § 2255 motion and then subsequently moved under Rule 60(b) to reopen it. *Id.* at 399. In *Ramirez v. United States*, 799 F.3d 845 (7th Cir. 2015), the court denied the petitioner's § 2255 motion, and the petitioner missed his deadline to apply for a certificate of appealability. *Id.* at 847. He filed a motion for relief from the judgment under Rule 60(b). *See id.* at 847–48.

Though his supplemental memorandum is not entirely clear on this point, Reeves appears to be arguing that, even if his Rule 60(b)(6) request is premature, he will be able to use Rule 60(b)(6) to revive his time-barred *Mathis* claim after judgment is entered. *See* Suppl. Mem. 11–14. If this is what Reeves is arguing, then he should be aware that Rule 60(b)(6) cannot be used as a "substitute for [an] appeal" of this court's limitations and equitable tolling rulings. *Andrews v. Heinold Commodities, Inc.*, 771 F.2d 184, 188 (7th Cir. 1985) (quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1950)). Rule 60(b)(6) also ordinarily cannot be used to "remedy an earlier omission," such as failing to make a legal or factual argument available to a party before the entry of judgment. *Id*. at 188–89; *see also Helm v. Resol. Tr. Corp.*, 84 F.3d 874, 879 (7th Cir. 1996).

For all of the foregoing reasons, the court rejects Reeves's Rule 60(b)(6) argument raised for the first time in his supplemental memorandum.

**B. *Franklin v. Keys***

Reeves devotes three pages of his supplemental memorandum to *Franklin v. Keys*, 30 F.4th 634 (7th Cir. 2022). Suppl. Mem. 8–11. Reeves was permitted to submit supplemental briefing on *Franklin* because he had assumed that the 2016 *Mathis* decision restarted the one-year limitations period for his § 2255 motion. *See Reeves I*, slip op. at 14–15. As Reeves concedes, Suppl. Mem. 10, *Franklin* holds clearly that this assumption was incorrect. *See Franklin*, 30 F.4th at 645.

Reeves nevertheless argues a hypothetical choice-of-law question concerning what would happen if he were to file a 28 U.S.C. § 2241 habeas corpus petition asserting his *Mathis* claim in the district where he is incarcerated, the Southern District of Mississippi. Relying on then-Circuit Judge Barrett's concurring opinion in *Chazen v. Marske*, Reeves contends that Seventh Circuit, not Fifth Circuit, law would govern such a hypothetical § 2241 petition. *See* Suppl. Mem. 8–10; *Chazen v. Marske,* 938 F.3d 851, 864–65 (7th Cir. 2019) (Barrett, J., concurring).

Exclusive jurisdiction to issue a writ of habeas corpus under § 2241 lies in the district in which a prisoner is confined. *See* 28 U.S.C. § 2241(a); *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)). This court therefore takes no position on the choice-of-law questions Reeves raises both because they are hypothetical and therefore unripe and because these arguments can be addressed only by the court with habeas corpus jurisdiction under § 2241.

### IV.  Certificate of Appealability

Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued only when the petitioner has presented "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, the applicant for § 2255 relief must show that reasonable jurists could find room to debate whether the petition should have been resolved in a different manner or that the issues presented are adequate to entitle the petitioner to proceed further with his claims. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The dismissal of Reeves's § 2255 motion turns on purely procedural issues–the one-year statute of limitations, equitable tolling, and the unavailability of Rule 60(b) relief. Where the court denies a § 2255 motion on procedural grounds without reaching an underlying constitutional claim, "a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. "If success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue . . . ." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

For the reasons discussed above, the court finds that jurists of reason could not debate this court's ruling, mandated by *Franklin*, that the one-year limitations clock began running on Reeves's *Mathis* claim in 2013 or its ruling that Reeves has not carried his burden to establish that he is entitled to equitable tolling. Nor could jurists of reason debate this court's ruling that Rule 60(b) relief is unavailable to Reeves. Accordingly, the court declines to issue a certificate of appealability.

## V. Conclusion

For the reasons stated, the one-year statute of limitations bars the *Mathis* claim raised in Mario Reeves's amended § 2255 motion, and Reeves has not carried his burden to establish the grounds necessary for equitable tolling. This result is frustrating, because even the government agrees that the *Mathis* claim may have merit. And the 20-year minimum prison term mandated by the statute framed this court's sentencing decision. Reeves deserved a long sentence, but had the mandatory minimum been 10 years, as Reeves contends, his sentence almost certainly would have been shorter.

The Seventh Circuit has repeatedly found as to a meritorious *Mathis*-based claim that "failing to provide § 2241 relief would be a miscarriage of justice." *Brown v. Krueger*, 25 F.4th 526, 528 (7th Cir. 2022); *accord Chazen*, 938 F.3d at 856; *but see Gamboa*, 26 F.4th at 417. But this is a § 2255 proceeding, and this court lacks jurisdiction to consider whether relief under § 2241 is available because Reeves is incarcerated in the Southern District of Mississippi.

Reeves's amended § 2255 motion, Civ. ECF No. 31, is dismissed as barred by the one-year statute of limitations. The court declines to issue a certificate of appealability.

Dated: December 21, 2022                    _____/s/_____

                                            Joan B. Gottschall
                                            United States District Judge